HUDSON, Justice.
Four irrevocable inter vivos trusts allege that their classification as "resident trusts" under Minn. Stat. § 290.01, subd. 7b (2016), is unconstitutional as applied to them under the Due Process Clauses of the United States and Minnesota Constitutions. The Trusts filed their 2014 Minnesota income tax returns under protest, then filed amended returns requesting refunds for the difference between taxation as resident trusts and taxation as non-resident trusts. After the Trusts' income tax refund requests were denied by the Commissioner of Revenue, the Trusts appealed to the Minnesota Tax Court. The Tax Court ruled in favor of the Trusts, holding that the statutory definition of "resident trusts," see Minn. Stat. § 290.01, subd. 7b(a)(2), violates the Due Process Clauses of the Minnesota and United States Constitutions as applied to the Trusts for the tax year at issue. Because we conclude that the Trusts lack sufficient relevant contacts with Minnesota during the applicable tax year to be permissibly taxed, consistent with due process, on all sources of income as residents, we affirm the decision of the Tax Court.
FACTS
This appeal of a Tax Court decision relates to four trusts (collectively, the "Trusts"): the Reid and Ann MacDonald Irrevocable GST Trust for Maria V. MacDonald (the "Maria Trust"); the Reid and Ann MacDonald Irrevocable GST Trust for Catherine Gray MacDonald (the "Catherine Trust"); the Reid and Ann MacDonald Irrevocable GST Trust for Laura Reid MacDonald (the "Laura Trust"); and *326 the Reid and Ann MacDonald Irrevocable GST Trust for Vandever R. MacDonald (the "Vandever Trust"). Based on the parties' stipulation, the relevant facts for purposes of this appeal are undisputed.
Each of the Trusts was created on June 25, 2009, by grantor Reid MacDonald, then a domiciliary of Minnesota, and each trust was initially funded with shares of nonvoting common stock in Faribault Foods, Inc. ("FFI"), a Minnesota S corporation. The original trustee for all four trusts was a California domiciliary, Edmund MacDonald. Initially, grantor Reid MacDonald retained control over the trust assets. Thus, for Minnesota income tax purposes, the Trusts were "grantor type trusts" for the first 30 months of their existence. During this period, although the grantor (Reid MacDonald) was required to file Minnesota income tax returns, the Trusts were not required to do so. See Minn. Stat. § 290.01, subd. 7b(a) (2016) (explaining that the "income or gains of ... [a grantor type] trust are taxable to the grantor or others treated as substantial owners" under the Internal Revenue Code).
On December 31, 2011, grantor Reid MacDonald relinquished his power to substitute assets in the Trusts. The Trusts therefore ceased to be "grantor type trusts" and became irrevocable on December 31, 2011. See Minn. Stat § 290.01, subd. 7b(a) ("[A] trust is considered irrevocable to the extent the grantor is not treated as the owner [of a trust]."). At the time the trusts became irrevocable, Reid MacDonald was domiciled in Minnesota. Based on Reid MacDonald's domicile in Minnesota when the Trusts became irrevocable, the Trusts were then classified as "resident trusts" under Minn. Stat. § 290.01, subd. 7b(a)(2).[1] Katherine Boone, a domiciliary of Colorado, became the sole Trustee for each of the Trusts on January 1, 2012.
After they ceased to be grantor-type trusts, the Trusts filed Minnesota income tax returns as resident trusts, without protest, in 2012 and 2013. On July 24, 2014, William Fielding, a domiciliary of Texas, became Trustee for the Trusts. Shortly thereafter, all shareholders of FFI stock, including the Trusts, sold their shares. Because the Trusts were defined to be Minnesota residents (as a result of grantor MacDonald's Minnesota domicile in 2011), they were subject to tax on the full amount of the gain from the 2014 sale of the FFI stock, as well on the full amount of income from other investments.[2] See Minn. Stat. § 290.17, subd. 2(c) (2016) (providing that Minnesota taxes "resident trusts" on all "income or gains from intangible personal property," including investment income, "not employed in the business of the recipient of the income"). Had the Trusts not been deemed residents of Minnesota, those items of income would have been assigned to the Trusts' domicile and would not have been subject to Minnesota income taxation. See Minn. Stat. § 290.17, subd. 2(e) (2016).
The Trusts filed their 2014 Minnesota income tax returns under protest, asserting that the statute classifying them as resident trusts, Minn. Stat. § 290.01, subd. 7b(a)(2), was unconstitutional as applied to them. The Trusts then filed amended tax returns claiming refunds for the difference *327 between the taxes owed as resident trusts and the taxes owed as nonresident trusts-a tax savings of more than $250,000 for each Trust.
The Commissioner of Revenue denied the Trusts' refund claims. The Trusts then appealed the Commissioner's orders denying the refund claims to the Minnesota Tax Court, asserting as-applied constitutional challenges under the state and federal Due Process Clauses[3] and the federal Commerce Clause to section 290.01, subdivision 7b(a)(2). Fielding v. Comm'r of Revenue , Nos. 8911-R, 8912-R, 8913-R, 8914-R, 2017 WL 2484593, at *1-2 (Minn. T.C. May 31, 2017).
Deciding the appeals on cross-motions for summary judgment, the Tax Court framed the issue presented to it as: "Whether, for due process purposes, the domicile of the grantor alone is a sufficient connection with Minnesota to justify taxing the Trusts as residents (that is, on a tax base that includes intangible personal property not related to Minnesota)." Id. at *11. The Tax Court then considered "the proper scope" of the due process inquiry. Id . at *12. The Trusts argued that the Tax Court should limit the due process inquiry to the single factor identified in the statute that defines a resident trust-"the grantor's domicile at the time the Trusts became irrevocable." Id. The Commissioner, in contrast, argued that the court should consider "all the contacts between Minnesota and the Trusts" in the due process analysis. Id . Agreeing with the Commissioner, the Tax Court determined that all relevant contacts between the taxpayer and Minnesota should be considered, but concluded that the only relevant contact was the single factor identified in the statute; namely, the grantor's residency at the time the Trusts became irrevocable. Id . at *13.
The Tax Court ultimately concluded that " section 290.01, subdivision 7b(a)(2), as applied to the Trusts for tax year 2014, violates the due process provisions of the Minnesota and United States constitutions." Id. at *20. Specifically, the court concluded that "Minnesota did not have a sufficient basis to tax the Trusts as 'residents' " because the grantor's domicile at the time the trust becomes irrevocable was not "a connection of sufficient substance" to support the exercise of taxing jurisdiction. Id . at *14, 19-20. According to the Tax Court, "Minnesota did not have subject matter jurisdiction over gain and income from ... items of intangible personal property not located within Minnesota." Id . at *20. Having decided the case on due process grounds, the Tax Court did not reach the Trusts' claims under the Commerce Clause. Id . at *20 n.87.
Based on its conclusion that the statutory definition for a "resident trust," as applied to the Trusts, violated the Due Process Clause, the Tax Court held that "the Commissioner erred in denying the Trusts' refund claims," granted the Trusts' motions for summary judgment, and denied the Commissioner's motions for summary judgment. Id. at *20. The Commissioner appeals from the Tax Court's decision.
ANALYSIS
The questions presented by this appeal, which involve consideration of statutory language and constitutional challenges, *328 are purely legal and subject to de novo review. See Luther v. Comm'r of Revenue , 588 N.W.2d 502, 506 (Minn. 1999). We presume that statutes are constitutional and hold the party asserting otherwise to a high burden to overcome that presumption. Kimberly-Clark Corp. v. Comm'r of Revenue , 880 N.W.2d 844, 848 (Minn. 2016).
I.
The dispute between the Trusts and the Commissioner implicates the extent of the Trusts' tax liability to Minnesota. If the Trusts are residents, Minnesota can tax the Trusts' worldwide income. See Shaffer v. Carter , 252 U.S. 37, 57, 40 S.Ct. 221, 64 L.Ed. 445 (1920) ("As to residents [the State] may, and does, exert its taxing power over [the taxpayers'] income from all sources...."). If the Trusts are not residents, Minnesota's tax authority is restricted. See Minn. Stat. § 290.17, subd. 2(c) (describing the scope of the State's tax authority over a "resident trust"); see also New York ex rel. Cohn v. Graves , 300 U.S. 308, 312-13, 57 S.Ct. 466, 81 L.Ed. 666 (1937) (explaining that residence within a state establishes the state's authority to tax the receipt of income by the resident).
Before evaluating whether the Trusts' contacts with Minnesota were sufficient for taxation as residents consistent with due process, we must first determine the scope of our inquiry. The language of Minn. Stat. § 290.01, subd. 7b(a)(2), defines a "[r]esident trust," in relevant part, as "a trust, except a grantor type trust, which ... is an irrevocable trust, the grantor of which was domiciled in this state at the time the trust became irrevocable." No other factors for determining residency are listed in the statute. Neither party argues that the statutory language is ambiguous; in fact, the parties stipulated that the statute's definition applies to the Trusts and that the Trusts filed their 2014 Minnesota tax returns (under protest) as residents.
Citing Rew v. Bergstrom , 845 N.W.2d 764, 780 (Minn. 2014), the Commissioner asserts that in an as-applied challenge based on the Due Process Clause, we must examine all facts and circumstances underlying the Commissioner's action, including the "practical operation of the tax residency statute" in this case and the multiple contacts between Minnesota and the Trusts. The Trusts argue that although their due process claim is an as-applied challenge, when evaluating the constitutionality of the statute, our consideration is limited to the single factor identified in the statute for determining residency-namely, the domicile of the grantor at the time the Trusts became irrevocable. The Trusts contend that to consider other facts, as the Commissioner urges, would effectively require that we add language to the statute.
We have said that a tax will satisfy due process if (1) there is a "minimum connection" between the state and the person, property, or transaction subject to the tax, and (2) the income subject to the tax is rationally related to the benefits conferred on the taxpayer by the State. See Luther , 588 N.W.2d at 508-09. In applying these requirements in the context of a due process challenge to a taxpayer's status as a resident for income tax purposes, we consider factors beyond those in the challenged residency statute. In Luther , for example, we considered "the many services, benefits, and protections afforded [the taxpayer] by Minnesota in her right to receive and enjoy her income." Id. at 509. Ultimately, after concluding that the taxpayer had "enjoyed the many services, benefits, and protections Minnesota provided for her" for the majority of the tax year, we held that the taxpayer's total contacts with Minnesota were sufficient to *329 meet due process requirements for taxing her as a resident. Id.
Luther and other decisions involving due process challenges to taxing statutes demonstrate that we look beyond the statutory definition that identifies who is subject to a tax in order to evaluate the relationship between the income taxed and the benefits provided by the state.[4] This analysis is not, as the Trusts claim, a matter of adding language to the statute. We are not redefining a resident trust; we are simply evaluating, as we have in other cases, all the relevant facts when considering whether the application of the statutory definition would be consistent with due process in this case.[5] Therefore, in accordance with our past decisions, we conclude that in the context of a due process challenge to the State's taxation of a taxpayer as a resident, we will examine all relevant contacts between the taxpayer and the State, including the relationship between the income attributed to the state and the benefits the taxpayer received from its connections with the state. See Luther , 588 N.W.2d at 508-09.
II.
We next consider whether the Trusts' contacts with Minnesota are sufficient, under the Due Process Clause, to permit them to be taxed as Minnesota residents. A state's tax satisfies due process if there is (1) some "minimum connection" between the state and the entity subject to the tax, and (2) a "rational relationship" between the income the state seeks to tax and the protections and benefits conferred by the state. Id. at 508 ; see also Allied-Signal, Inc. v. Dir., Div. of Taxation , 504 U.S. 768, 778, 112 S.Ct. 2251, 119 L.Ed.2d 533 (1992) (explaining that in a due process challenge, "there must be a connection to the activity itself, rather than a connection only to the actor the State seeks to tax," and the "basic principle" is that the "State's power to tax ... activities is justified by the protection, opportunities and benefits the State confers on those activities" (citation omitted) (internal quotation marks omitted) ).
Here, we are asked to decide not whether any particular source of trust income can be constitutionally taxed by Minnesota. Indeed, the Trusts do not dispute the constitutionality of taxing their Minnesota-sourced income and have acknowledged that the apportioned flow-through operating income from FFI is subject to tax by Minnesota. The Trusts' Minnesota tax returns report this income.
*330 Instead, the question we must decide instead is whether Minnesota may permissibly tax all sources of income to the Trusts simply because it has classified the Trusts as residents based on events that pre-date the tax year at issue (2014). The dispute here is whether the undisputed facts in addition to the domicile of the grantor in 2011 (when the Trusts were made irrevocable) provide a sufficient basis under the Due Process clause to support Minnesota's taxation of all of the income of the Trusts.
The Commissioner contends that she can constitutionally tax the Trusts' worldwide income based on several contacts between Minnesota and the Trusts, asserting that the Trusts "ow[e] their very existence" to Minnesota. Specifically, the grantor, Reid MacDonald, was a Minnesota resident when the Trusts were created, was domiciled in Minnesota when the Trusts became irrevocable, and was still domiciled in Minnesota in 2014. The Trusts were created in Minnesota, with the assistance of a Minnesota law firm, which drafted, and until 2014 retained, the trust documents. The Trusts held stock in FFI, a Minnesota S corporation. The Trust documents provide that questions of law arising under the Trust documents are determined in accordance with Minnesota law. Finally, one beneficiary, Vandever MacDonald, has been a Minnesota resident at least through the tax year at issue.
The Trusts, on the other hand, note that no Trustee has been a Minnesota resident, the Trusts have not been administered in Minnesota, the records of the Trusts' assets and income have been maintained outside of Minnesota, some of the Trusts' income is derived from investments with no direct connection to Minnesota, and three of the four trust beneficiaries reside outside of Minnesota.
We conclude that the contacts on which the Commissioner relies are either irrelevant or too attenuated to establish that Minnesota's tax on the Trusts' income from all sources complies with due process requirements. We reach this conclusion for the following three reasons.
First, the grantor's connections to Minnesota-the Minnesota residency of Reid MacDonald in 2009, when the Trusts were established; in 2011, when the Trusts were made irrevocable; and in 2014, when the Trusts sold the FFI stock-are not relevant to the relationship between the Trusts' income that Minnesota seeks to tax and the protection and benefits Minnesota provided to the Trusts' activities that generated that income. The relevant connections are Minnesota's connection to the trustee, not the connection to the grantor who established the trust years earlier.
A trust is its own legal entity, with a legal existence that is separate from the grantor or the beneficiary. See Greenough v. Tax Assessors of Newport , 331 U.S. 486, 495-96, 67 S.Ct. 1400, 91 L.Ed. 1621 (1947) ("The citizenship of the trustee and not the seat of the trust or the residence of the beneficiary is the controlling factor."); Anderson v. Wilson , 289 U.S. 20, 27, 53 S.Ct. 417, 77 L.Ed. 1004 (1933) (noting that "the law has seen fit" to consider a trust "for income tax purposes as a separate existence"). Here, grantor Reid MacDonald is not the taxpayer, the Trusts are. Moreover, regardless of the grantor's personal connections with Minnesota, after 2011 he no longer had control over the Trusts' assets. See, e.g. , Safe Deposit & Tr. Co. of Baltimore v. Virginia , 280 U.S. 83, 91-93, 50 S.Ct. 59, 74 L.Ed. 180 (1929) (concluding that Virginia, where the grantor resided but had no "control or possession" over the intangible assets of the trust, which was domiciled in Maryland, could not impose a tax on those assets);
*331 Taylor v. State Tax Comm'n , 85 A.D.2d 821, 445 N.Y.S.2d 648, 649 (1981) (holding that New York could not impose an income tax on trust property because "possession and control" of those assets was held by trustees who were not residents of or domiciled in New York). For similar reasons, the Minnesota residency of beneficiary Vandever MacDonald does not establish the necessary minimum connection to justify taxing the Trusts' income.[6] See Greenough , 331 U.S. at 495-96, 67 S.Ct. 1400.
Nor do we find the grantor's decision to use a Minnesota law firm to draft the trust documents to be relevant. The parties stipulated that the law firm represented the grantor. Other than retaining the original signed trust documents, nothing in the record establishes that the law firm represented the Trusts or the Trustees in connection with the activities that led to the income that the State seeks to tax, let alone during the tax year at issue.[7] We are unwilling to attribute legal significance to the storage of the original signed trust documents in Minnesota, when this act may have been nothing more than a service or convenience extended to the firm's client-the grantor.
Second, the Trusts did not own any physical property in Minnesota that might serve as a basis for taxation as residents. See, e.g. , Westfall v. Dir. of Revenue , 812 S.W.2d 513, 514 (Mo. 1991) (upholding Missouri's tax on a trust, in part because the trust owned real property in the state). The Commissioner urges us to hold that the Trusts may be taxed as residents due to their connections to FFI, a Minnesota S corporation, and it is undisputed that the Trusts held interests in intangible property , FFI stock. Although FFI was incorporated in Minnesota and held physical property within the state, the intangible property that generated the Trusts' income was stock in FFI and funds held in investment accounts. These intangible assets were held outside of Minnesota, and thus do not serve as a relevant or legally significant connection with the State. See, e.g. , Safe Deposit & Tr. Co. , 280 U.S. at 92, 50 S.Ct. 59 (stating that intangible assets held by a trustee located in Maryland "did not and could not follow" the grantor and beneficiaries who were *332 domiciled in Virginia); In re Swift , 727 S.W.2d 880, 881-82 (Mo. 1987) (concluding that the "creation and funding" of the trusts in Missouri with intangible assets that the trustee "held, managed and administered in Illinois" did not allow Missouri to tax the trust's income); Mercantile-Safe Deposit & Tr. Co. v. Murphy , 19 A.D.2d 765, 242 N.Y.S.2d 26, 28 (1963) (concluding that New York, which was the grantor's domicile, could not tax the trust's income from intangible assets held in Maryland).[8]
Third, we do not find the contacts with Minnesota that pre-date 2014, the tax year at issue, by the grantor, the Trusts, or the beneficiaries, to be relevant. We have evaluated a taxpayer's contacts with Minnesota, for due process purposes, in the tax year at issue. See Luther , 588 N.W.2d at 509 (explaining that the taxpayer had the "opportunity to enjoy the many services, benefits, and protections" provided by the State for at least "the majority of" the tax year at issue). Other courts have also held that the relevant facts for evaluating the sufficiency of a taxpayer's contacts are drawn from the tax year at issue. See, e.g. , Linn v. Dep't of Revenue , 377 Ill.Dec. 922, 2 N.E.3d 1203, 1210 (Ill. App. Ct. 2013) ("[W]hat happened historically with the trust in Illinois courts and under Illinois law has no bearing on the 2006 tax year."); Potter v. Taxation Div ., 5 N.J. Tax 399, 404-05 (N.J. Tax Ct. 1983) (declining to rely on the trust's receipt of the grantor's assets, which "occurred prior to the tax year in question," to allow the state to tax).
There is good reason to focus on the taxpayer's contacts in the tax year at issue. The direct link between the activities that generated the income in the year at issue and the protections provided by the State in that same year establishes the necessary rational relationship that justifies the tax. In contrast, allowing the State to look to historical contacts unrelated to the tax year at issue risks leaving taxpayers unaware of whether or when their contacts with Minnesota may justify the imposition of a tax. See Luther , 588 N.W.2d at 508 ("Due process deals with the fairness of the tax at issue and ensures that the taxpayer has adequate notice that she may be subject to the tax.").
In addition, allowing the State to pick and choose among historical facts unrelated to the tax year at issue is unworkable. This ad hoc approach could force taxpayers to challenge tax liability annually until a court determines that the past contacts have sufficiently decayed such that they are no longer sufficient to support taxation as a resident. Nor can we see any reasonable means of determining when the decay will be sufficient. Accord Blue v. Dep't of Treasury , 185 Mich.App. 406, 462 N.W.2d 762, 764-65 (1990) ("We analogize the present case to a hypothetical statute authorizing that any person born in Michigan to resident parents is deemed a resident and taxable as such, no matter where they reside or earn their income. We believe this would be clearly outside of the state's power to impose taxes.").
Thus, we are left to consider the extremely tenuous contacts between the *333 Trusts (or their Trustees) and Minnesota during tax year 2014. The Trustees had almost no contact with Minnesota during the applicable tax year. All trust administration activities by the Trustees occurred in states other than Minnesota. Boone never traveled to Minnesota during her time as a Trustee. Fielding traveled to Minnesota for a weekend in the fall of 2014 to attend a wedding, but he never traveled to Minnesota for any purposes related to the Trusts. This level of contact is clearly not enough to establish residency for taxation purposes.
We acknowledge that "questions of law" that may arise under the trust agreements are determined by the laws of Minnesota. Standing alone, however, this choice-of-law provision is not enough to permissibly tax the Trusts as residents. Our laws protect residents and non-residents alike. We will not demand that every party who chooses to look to Minnesota law-not necessarily to invoke the jurisdiction of Minnesota's courts-must pay resident income tax for the privilege. Of note here, unlike cases in other states that considered testamentary trusts, the inter vivos trusts at issue here have not been probated in Minnesota's courts and have no existing relationship to the courts distinct from that of the trustee and trust assets. See District of Columbia v. Chase Manhattan Bank , 689 A.2d 539, 544 (D.C. 1997) ; In re Swift , 727 S.W.2d at 882.
The dissent places significance on the Trusts' funding from shares of common stock in a Minnesota S corporation, relying on Luther 's language regarding the protections provided by state law to corporations affiliated with the nondomiciliary resident taxpayer. See 588 N.W.2d at 509. In Luther , this benefit was one of "many services, benefits, and protections" provided to the taxpayer during the year in which the tax was imposed. Id. (also noting that "for the majority of 1990 , Luther" enjoyed these state-provided benefits (emphasis added) ).[9] Due process does not merely require that some benefit be conferred on the taxpayer. Due process requires that there be a rational relationship between the amount the State asks a taxpayer to contribute and the amount of "services, benefits, and protections" the taxpayer receives and enjoys. Id.
The dissent insists that there is a rational relationship between the benefits conferred on the Trusts and taxing the Trusts in 2014 on their full worldwide income as residents. In reaching this conclusion, the dissent ignores the numerous stipulated facts demonstrating that the Trusts had almost no contact with the State during the tax year at issue. The Trustees, not the grantor, made all decisions regarding the Trusts, including whether to sell the stock in FFI. These decisions were made entirely outside of Minnesota, and all 2014 Trust records of assets and income were maintained outside of Minnesota. The Trustees never travelled to Minnesota for Trust business in 2014 and were never plaintiffs *334 or defendants in any other suit before Minnesota courts in their capacity as Trustees. When the full context is viewed, it becomes clear that the Trusts did not enjoy a level of services, benefits, and protections anywhere near those enjoyed by the taxpayer in Luther , 588 N.W.2d at 509.[10]
Accordingly, even when the additional contacts the Commissioner cites are considered in combination, the State lacks sufficient contacts with the Trusts to support taxation of the Trusts' entire income as residents consistent with due process. The State cannot fairly ask the Trusts to pay taxes as residents in return for the existence of Minnesota law and the physical storage of trust documents in Minnesota. Attributing all income, regardless of source, to Minnesota for tax purposes would not bear a rational relationship with the limited benefits received by the Trusts from Minnesota during the tax year at issue. We therefore hold that Minn. Stat. § 290.01, subd. 7b(a)(2), is unconstitutional as applied to the Trusts.[11]
CONCLUSION
For the foregoing reasons, we affirm the decision of the Tax Court.
Affirmed.
Dissenting, Lillehaug, McKeig, JJ.
THISSEN, J., not having been a member of this court at the time of submission, took no part in the consideration or decision of this case.
DISSENT

"Resident trust means a trust, except a grantor type trust, which ... is an irrevocable trust, the grantor of which was domiciled in this state at the time the trust became irrevocable." Minn. Stat. § 290.01, subd. 7b(a)(2).

In October 2014, Fielding approved the transfer of funds from the sale of the FFI stock to an investment account that was managed and administered by Wells Fargo in California. From October through December 2014, the Trusts earned income on these investment funds.

Both the Minnesota and United States Constitutions state that no person shall be deprived of life, liberty, or property without due process of law. See U.S. Const. amend. XIV, § 1 ; Minn. Const. art. I, § 7. We treat the due process protections in the United States Constitution and the Minnesota Constitution identically. Schatz v. Interfaith Care Ctr. , 811 N.W.2d 643, 657 (Minn. 2012). We therefore refer generally to the "Due Process Clause" rather than differentiating between the two Due Process Clauses.

See, e.g. , Watlow Winona, Inc. v. Comm'r of Revenue , 495 N.W.2d 427, 434 (Minn. 1993) (explaining that "once a state has decided to tax a corporation as a unitary business using an apportionment formula," the taxation is unconstitutional if "the income attributed to the State is in fact 'out of all appropriate proportions' to the business transacted in that State" (citations omitted) ); Soo Line R.R. Co. v. Comm'r of Revenue , 377 N.W.2d 453, 456 (Minn. 1985) (stating that we consider whether a "tax is fairly apportioned to activities within the state" in a due process challenge to a method of apportionment); Harris v. Comm'r of Revenue , 257 N.W.2d 568, 571 (Minn. 1977) (finding "no nexus between [Minnesota] and the taxpayer's income-producing activity in the State of Georgia" for purposes of a due process challenge to a statute that disallowed deductions on Minnesota returns for the expenses of moving outside of Minnesota for work).

The Tax Court engaged in statutory construction in reaching its conclusion that the only relevant factor was the single factor contained in the resident trust definition. See Fielding , 2017 WL 2484593, at *12-13. However, both parties agree that the statute is unambiguous in its plain language, so there is no need to construe the statute. Moreover, we do not read the statute's language as an attempt by the Legislature to constrain the scope of judicial authority when considering substantive due process challenges. See generally Luther , 588 N.W.2d at 508-09.

As a domiciliary of Minnesota, Vandever MacDonald filed a Minnesota resident income tax return for 2014. The permissibility of taxing Vandever MacDonald as an individual for disbursements from the Vandever Trust is entirely separate from taxing the Vandever Trust as a resident . Even if the domicile of a beneficiary were an appropriate factor to consider, it would not support taxing the three Trusts that have non-resident beneficiaries. Vandever MacDonald's status as a contingent beneficiary for the Maria Trust, Catherine Trust, and Laura Trust is also irrelevant, both because of the distinction between the entities subject to tax (Vandever individually as distinguished from the Trusts) and because the contingency did not come to pass during the tax year at issue.
The dissent reaches a different conclusion by relying on T. Ryan Legg Irrevocable Trust v. Testa , 149 Ohio St.3d 376, 75 N.E.3d 184 (2016). But that case is distinguishable because the Ohio statute that defines trust residency considers whether the grantor is a resident at the time the trust is established "and whether a 'qualifying beneficiary' is an Ohio resident." Id . at 195-96. In addition, the relevant contacts at issue in that case regarding trust creation, funding, and tax liability spanned a mere 3 months. Id . at 186-87. Here, in contrast, the Commissioner and the dissent look back, several years in some cases, to find contacts by persons other than the Trust and the trustees.

The same law firm that represented the grantor now represents the Trusts in this tax proceeding. But the record does not establish when the Trusts retained the law firm for purposes of this challenge, and in any event, this representation is not relevant to the activities that generated the income that the State seeks to tax.

We relied on the doctrine of mobilia sequuntur personam ("movables follow the [law of the] person") in Luther for the proposition that intangible assets such as trust income have no particular situs for tax purposes. See 588 N.W.2d at 511-12. Here, the taxpayer-holder of the legal title to the stock in FFI and the other income-producing intangible assets-is the Trustee, who, it is undisputed, is not a Minnesota resident. Intangible assets are appropriately taxed as being resident in the jurisdiction where the owner of legal title-the Trustee-is a resident. See Greenough , 331 U.S. at 495-96, 67 S.Ct. 1400 ; Safe Deposit & Tr. Co. , 280 U.S. at 93, 50 S.Ct. 59.

Thus, District of Columbia v. Chase Manhattan Bank , 689 A.2d 539 (D.C. 1997), on which the dissent relies, is distinguishable. There, the court relied on the probate proceedings "in the courts of the District of Columbia" to show "a relationship to the District distinct from the relationship, if any, between the District and the trustee or trust assets." Id . at 544. Unlike the taxpayer in Luther , who intentionally sought the benefits, protections, and services that Minnesota provided in the year in which she was subject to Minnesota tax, and unlike the taxpayer in Chase Manhattan Bank , in which a testamentary trust consented to the "continuing supervisory jurisdiction" of the District of Columbia courts, including for "litigation" and "claims," id . at 540-41, nothing in the record here shows that the Trustee or any of the Trusts have actively or actually sought the benefits or protections provided by Minnesota in the year in which Minnesota seeks to tax the Trusts.

The dissent also refers to benefits the State is alleged to have provided to the beneficiaries of the Trusts. This argument improperly conflates the tax status of the beneficiaries with the tax status of the Trusts. As discussed above, whether and how Minnesota can tax resident beneficiaries is entirely distinct from whether the State can tax the Trusts, which are separate legal entities.

Because we hold that the application of Minn. Stat. § 290.01, subd. 7b, to the Trusts is unconstitutional under the Due Process Clause, we express no opinion on the Commerce Clause arguments raised by the parties.