**DISTRICT OF COLUMBIA, Appellant,**

v.

**The CHASE MANHATTAN
BANK, Appellee.**

No. 95–TX–1599.

District of Columbia Court of Appeals.

Argued Dec. 13, 1996.
Decided Jan. 30, 1997.

Lutz Alexander Prager, Assistant Deputy Corporation Counsel, with whom Charles F.C. Ruff, Corporation Counsel, and Charles L. Reischel, Deputy Corporation Counsel, were on the brief, for appellant.

John J. McAvoy, with whom Anne D. Smith and Ellen S. Moore were on the brief, Washington, for appellee.

Before FERREN, FARRELL and REID, Associate Judges.

FERREN, Associate Judge:

This case presents an issue of first impression in this court: can the District of Columbia, consistent with the Due Process Clause, tax the annual net income of a testamentary trust created by the will of an individual who died while domiciled in the District, when the trustee, trust assets, and trust beneficiaries are all presently located outside the District. We hold that the Due Process Clause does not prevent the District from imposing such a tax, given the continuing supervisory relationship which the District's courts have with respect to administration of such a trust, and in so doing we reject several decisions in other states holding that due process requires a greater connection between the trust and the taxing jurisdiction than the residence of the settlor. We therefore reverse the trial court's order granting summary judgment in favor of the trustee and denying the District's motion for summary judgment.

## I.

### A.

The facts are not in dispute and can be summarized briefly. William A. Lalor was a resident of the District of Columbia when he died in 1934. His will placed most of his wealth in a trust and appointed as co-trustees John Nichols, a resident of New Jersey, and what is now The Chase Manhattan Bank, of New York.[1] Dr. Charles Lalor Burdick, a Delaware resident, replaced Nichols in 1939 and served as co-trustee until 1989. Chase Manhattan is now the sole trustee.

The will directed the trustees to pay annuities to certain relatives and friends of Lalor until twenty-one years after the last to die of two of his nieces, Esther Lalor Guth[2] and Ruth Lalor Olson.[3] At the end of this period, the remaining funds will be distributed to the lawful issue of Lalor's five nieces and nephews. The will further instructed the trustees to invest the trust assets and accumulate all income not needed to pay the annuities or compensate the trustees. The trustees were only permitted to invest in "stocks and bonds of the character permissible for trust investments under the laws of the District of Columbia."

Lalor's will was admitted to probate in 1935. Shortly thereafter, the trustees sought a construction of the will to determine the validity of the accumulation of trust income for a period of lives in being plus twenty-one years in light of a challenge under the rule against perpetuities. *See Gertman v. Burdick*, 75 U.S.App.D.C. 48, 50, 123 F.2d 924, 926 (1941). A more detailed account of this litigation is unnecessary; it suffices to point out that the court ultimately upheld the validity of the accumulation, *see id.* at 57–58, 123 F.2d at 933–34.

The courts of the District of Columbia have exercised continuing supervisory jurisdiction over the trust since its inception. In addition to annual accountings the trustees were required to file, the courts have handled litigation in 1977 and again in 1992 concerning claims by several individuals to beneficiary status. In 1968, the U.S. District Court for the District of Columbia, which exercised

---

1. According to appellee, Chemical Bank, the trustee named in the will, changed its name to The Chase Manhattan Bank effective July 13, 1996.

2. The will refers to Esther Lalor Guth as "Esther Lalor." Ms. Guth died in 1981. In some of the trial court proceedings, the trust was referred to as the "Guth trust." We will refer to it as the "Lalor trust" or simply as the "trust."

3. The will refers to Ruth Lalor Olson as "Ruth Lalor." According to documents filed with the trial court, Ms. Olson is currently alive.

local jurisdiction over the trust until 1981, authorized the trustees to maintain the trust assets outside the District of Columbia. In 1990, the Superior Court waived the requirement that the remaining trustee file an annual accounting of the activities of the trust with the court and disavowed any "continuing supervision" over the trust. The Superior Court also set a new compensation schedule for the trustee in 1990.

Chase Manhattan, the sole trustee, is located in New York; all the trust's assets are held in accounts at that bank. Neither the current beneficiaries of the trust nor any of the potential remainderpersons have resided in the District of Columbia during the time period at issue in this litigation.

The trust's income has far outstripped its annual obligations. The trust was worth approximately $2 million at its inception and has been recently valued at $17.8 million. Between 1987 and 1991, the trust paid taxes to the District on the income earned during each year. After an unsuccessful attempt to obtain a refund from the D.C. Department of Finance and Revenue, Chase Manhattan initiated the present lawsuit in Superior Court, demanding a refund of income taxes paid on behalf of the trust in the 1987–1991 tax years. Chase Manhattan asserted that the District's taxation of the trust income violated due process because the trustee, trust assets, and trust beneficiaries were located outside the District of Columbia during the years in question. Chase Manhattan and the District stipulated to the facts and filed cross-motions for summary judgment. The trial court granted Chase Manhattan's motion for summary judgment as to all but one of the years in question[4] and ordered the District to issue a tax refund in the amount

of $324,315.24, plus interest. The District filed the present appeal.

### B.

The District of Columbia taxes the income of "resident trusts" in the same manner it taxes resident individuals. See D.C.Code § 47–1809.3 (1990 Repl.). Under the statute, a testamentary trust is a resident trust "[i]f the decedent was at the time of his [or her] death domiciled within the District." Id. § 47–1809.1. Conversely, a testamentary trust is nonresident if the decedent was not a domiciliary of the District at the time of death. See id. To ensure an absolute clarity of definition, the statute further provides that "[t]he residence or situs of the fiduciary shall not control the classification of estates and trusts as resident or nonresident under the provisions of § 47–1809.1." Id. § 47–1809.2.

The statute permits the trust to deduct from its net taxable income all income distributed to beneficiaries during the same tax year. Id. § 47–1809.5(1). The trust also may claim a tax credit equal to the amount paid in income taxes to any state. Id. § 47–1807.5, –1806.4(a).[5] This tax credit eliminates any possibility that the income of the trust could be subject to double taxation.

There is no dispute, then, that the Lalor trust is a resident trust subject to taxation under the laws of the District of Columbia. The only dispute is whether this taxation is prohibited by the Constitution.

### C.

■ The Due Process Clause[6] "requires some definite link, some minimum connection, between a state and the person, proper-

---

**4.** The trial court denied Chase Manhattan's summary judgment motion, and granted the District's corresponding motion, as to the 1990 tax on procedural grounds. Chase Manhattan has not filed a cross-appeal and therefore we have no cause to consider that aspect of the trial court's opinion.

**5.** New York, in any event, does not tax the accumulated income of a testamentary trust merely because the trustee or trust assets are located in New York. See N.Y. Tax Law § 605(b)(3)(B) (West, WestLaw through 1996 Ch. 599).

**6.** The Fifth Amendment provides, in relevant part: "No person shall be ... deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. Most cases considering the jurisdictional aspect of due process arise out of the Fourteenth Amendment's parallel provision. Neither party argues that the due process analysis of the District's power to tax is in any way affected by this distinction.

ty, or transaction it seeks to tax." *Miller Bros. Co. v. Maryland*, 347 U.S. 340, 344–45, 74 S.Ct. 535, 539, 98 L.Ed. 744 (1954). The Supreme Court recently has equated this analysis with the determination of whether a state has in personam jurisdiction over a given entity. *See Quill Corp. v. North Dakota*, 504 U.S. 298, 307–08, 112 S.Ct. 1904, 1910–11, 119 L.Ed.2d 91 (1992). In *Quill*, the Court rejected the notion that a corporation's "lack of physical presence in the taxing State" rendered unconstitutional any.attempt by the state to tax the corporation's activities with respect to the state. *Id.* at 308, 112 S.Ct. at 1910. More specifically, the Court rejected a mail-order company's due process challenge to a North Dakota law requiring all corporations that regularly solicit business in the state to collect a use tax on property purchased for storage, use, or consumption within North Dakota, even if the corporation merely used the mails and had no physical presence within the state. *See id.* at 302–03, 308, 112 S.Ct. at 1907–08, 1910.

■ The *Quill* Court noted that in the personal jurisdiction context it had "abandoned more formalistic tests that focused on a defendant's 'presence' within a State for a more flexible inquiry into whether a defendant's contacts with the forum made it reasonable" for the state to exercise jurisdiction. *Id.* at 307, 112 S.Ct. at 1910. The constitutionality of a state's assertion of personal jurisdiction thus depends on whether the party has "minimum contacts with the jurisdiction 'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.' " *Id.* (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)) (additional internal quotation marks omitted).

■ The *Quill* Court proceeded to apply "comparable reasoning" in analyzing North Dakota's use tax and concluded that Quill's ongoing solicitation of business in the state was more than enough to subject the company to the state's taxing jurisdiction. *Id.* at 308, 112 S.Ct. at 1910. While the Court's previous decisions had suggested that a state could not tax a corporation unless it had some physical presence within the state—such as sales personnel or local retail stores—these decisions had been preempted by general developments in the Court's due process jurisprudence. *See id.* at 306–08, 112 S.Ct. at 1909–11. The Court overruled these decisions, noting that "it matters little that such solicitation [of business] is accompanied by a deluge of catalogs rather than a phalanx of drummers. The requirements of due process are met irrespective of a corporation's lack of physical presence in the taxing State." *Id.* at 308, 112 S.Ct. at 1911.[7]

■ The Supreme Court has long recognized that a state may tax the entire income of an individual residing in that state, regardless of the source of the income: "Domicil[e] itself affords a basis for such taxation. Enjoyment of the privileges of residence in the state and the attendant right to invoke the protection of its laws are inseparable from responsibility for sharing the costs of government." *New York ex rel. Cohn v. Graves*, 300 U.S. 308, 313, 57 S.Ct. 466, 467, 81 L.Ed. 666 (1937). Similarly, at least one court has held that a state may tax the entire net income of a domestic corporation even if it conducts all its business out-of-state. *See Commercial Credit Consumer Servs., Inc. v. Norberg*, 518 A.2d 1336, 1337–38 (R.I.1986); *see also Cream of Wheat Co. v. Grand Forks County, North Dakota*, 253 U.S. 325, 328, 40 S.Ct. 558, 559, 64 L.Ed. 931 (1920) (noting that authority of state to tax domestic corpo-

7. In a separate portion of its opinion, the *Quill* Court concluded that the use tax violated the " 'negative' or 'dormant' Commerce Clause." *Id.* at 309–19, 112 S.Ct. at 1911–16. The Court held that by its own force the Commerce Clause, which prohibits state activity that unduly interferes with interstate commerce, requires a greater "nexus" between the state and the activity it seeks to tax. *See id.* at 312, 112 S.Ct. at 1913. Whereas the due process analysis is concerned with "fundamental fairness," the Commerce Clause analysis is informed "by structural concerns about the effects of state regulation on the national economy." *Id.* The Court's adherence to its prior Commerce Clause jurisprudence was further buttressed by its recognition that Congress has the ultimate authority to determine whether state conduct unfairly burdens interstate commerce. *See id.* at 318, 112 S.Ct. at 1916. Chase Manhattan has not challenged the District's tax on Commerce Clause grounds.

ration is unaffected by fact that corporation conducted all its business in another state). As one commentator has noted: "Under principles of due process, jurisdiction to tax all the income of a domestic corporation is particularly apropos in view of the fact that the taxpayer-corporation derives its very existence from the taxing state." 2 RONALD D. ROTUNDA & JOHN E. NOWAK, TREATISE ON CONSTITUTIONAL LAW: SUBSTANCE AND PROCEDURE § 13.4, at 185 (2d ed. 1992). A state, moreover, may impose taxes on foreign corporations to the extent the taxes "bear fiscal relation to protection, opportunities and benefits given by the state." *Wisconsin v. J.C. Penney Co.,* 311 U.S. 435, 444, 61 S.Ct. 246, 249, 85 L.Ed. 267 (1940).

## II.

■ We must decide, then, whether it is reasonable, in the constitutional sense of the word, for the District to treat a trust created by the will of one of its domiciliaries as a "resident" trust for purposes of taxation, even when the trustee, trust assets, and beneficiaries are all located outside the District. As elaborated below, we conclude that it is constitutionally reasonable for the District to do so. The District may therefore tax a testamentary trust throughout its entire existence even if its only connection to the District is that the testator was domiciled there at the time of death.

## A.

This case ultimately may be reduced to a pair of dueling analogies. The District argues that a testamentary trust is akin to a domestic corporation. Under this view, a testamentary trust owes its very existence to the laws and courts of the District of Columbia and therefore the District is justified in treating the trust as it would any other "resident" of the District. As an example of this close relationship between the trust and the District, counsel points to the continuous su-

pervision of the Lalor trust by the courts of the District of Columbia, in the form of annual accountings submitted by the trustee (or trustees) and audited under the supervision of the court. The courts also have been available to resolve disputes over construction of the trust and the qualification of beneficiaries. In short, according to the District, the trust has sought and received the benefit and protections of the District's laws, and the District, therefore, may tax the trust accordingly.

■ Chase Manhattan, the trustee, unsurprisingly takes a different view. It argues that the admission of Lalor's will into probate in the District amounts to no more than a mere "historical connection" between the trust and the District, and that the accountings required by the courts were an "administrative and financial burden on the Trust" that cannot create a basis for a continuing jurisdiction to tax the trust.[8] Chase Manhattan then quotes the following analysis holding that Michigan could not tax an inter vivos trust simply because the settlor was domiciled in Michigan at the time of her death, when the trust became irrevocable:

> The state cannot create hypothetical legal protections through a classification scheme whose validity is constitutionally suspect and attempt to support the constitutionality of the statute by these hypothetical legal protections. We analogize the present case to a hypothetical statute authorizing that any person born in Michigan to resident parents is deemed a resident and taxable as such, no matter where they reside or earn their income.

*Blue v. Department of Treasury,* 185 Mich. App. 406, 462 N.W.2d 762, 764 (1990). Thus, according to Chase Manhattan, the District cannot create a purely formal legal distinction between a resident trust and a nonresident trust and then rely on that very distinc-

---

**8.** The trustee also maintains that whatever benefits have accrued to the trust from the accountings have already been paid for in the form of court fees. This argument misses the point, however. An individual who resides in the District, for example, does not become exempt from income taxes simply because the city charges a fee for filing a lawsuit or for obtaining a driver's license. The fact of residence gives rise to the obligation to pay taxes, and the government need not prove that the resident has received government services in precise relation to the amount of taxes collected.

tion to support its power to tax the trust on its entire net income.

To a certain point, we agree. The fact that the District calls some entity—be it a trust, individual, or corporation—a "resident" does not, by itself, give the District any greater power over that entity than it would have in the absence of such a statutory classification. At least in the context of individuals and corporations, however, the concept of residency, if established by reference to sufficient minimum contacts, carries significant legal weight. As we have noted above, a state may tax the entire income of one of its residents (including a corporation), even if some or all of that income is earned in another state. The critical question, then, is whether the relationship between the District and the testamentary trust of one of its residents is sufficiently close to justify the District's classification of the trust itself as a resident for purposes of taxation.

A testamentary trust of a District resident, which has been probated in the courts of the District of Columbia, has a relationship to the District distinct from the relationship, if any, between the District and the trustee or trust assets. The District's unquestioned power to resolve disputes over the trust and to order accountings to protect the trust corpus and beneficiaries from potential malfeasance by the trustee reflects the District's justifiable, though not necessarily exclusive, jurisdiction over the trust itself. One commentator has characterized this authority as follows: "Under the 'trust entity' theory, a testamentary trust is established and remains at the testator's domicile, thereby giving the domiciliary court *in rem* jurisdiction independent and apart from the presence of the trustee, the trust assets or the trust beneficiaries." GEORGE T. BOGERT, TRUSTS § 177, at 686 (6th ed. 1987).

■ Bogert continues with a description of when a state can and will exercise jurisdiction over a testamentary trust created in another state:

> If a court of the domiciliary state has already assumed jurisdiction, the courts of another state with jurisdiction based upon the situs of the trust property or upon the trustee's domicile generally will decline to entertain a proceeding relating to the construction, validity or administration of the trust. However, even though the court of continuing jurisdiction retains primary jurisdiction, its jurisdiction is not exclusive and "the courts of other states may exercise jurisdiction over the trustee, or they have jurisdiction over the trust assets insofar as interests in those assets are concerned."

*Id.* (quoting RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 267 cmt. d (1971)) (footnote omitted). Accordingly, it is important to recognize that, even though a state may have jurisdiction over a non-resident testamentary trust because the trustee or trust assets are located in that state, the state where the trust was created and administered also retains jurisdiction—indeed, the principal, continuing jurisdiction—over the trust. Thus, the authority of that "creating" state to tax the testamentary trust is not necessarily precluded by the fact that other states may have jurisdiction over the trust as well.

As we already have noted, the Supreme Court has equated a state's power to exercise jurisdiction over an entity and the state's power to tax that entity. See *supra* part I.C (citing *Quill*, 504 U.S. at 308, 112 S.Ct. at 1910). Under this line of reasoning, therefore, the District's ties to the trust itself justify both the District's continuing, supervisory jurisdiction over the entire trust (irrespective of the absence of the trustees, trust assets, or trust beneficiaries from the District) and the District's taxation of the entire net income of the trust (also irrespective of the location of the trustee, trust assets, or trust beneficiaries).

■ The District's proffered analogy between a corporation and a testamentary trust proves quite useful in confirming the nexus between the District and the trust. A testamentary trust, like a corporation, is a creature of the laws of the state where it is created and owes its very existence to those laws. As the Supreme Court noted long ago in discussing the taxation of corporations: "[A corporation] must dwell in the place of its creation, and cannot migrate to another sovereignty. The fact that its property and

business were entirely in another state did not make it any less subject to taxation in the state of its domicile." *Cream of Wheat Co.*, 253 U.S. at 328, 40 S.Ct. at 559 (internal quotation marks and citations omitted).[9]

We see no constitutional barrier to the District's decision to treat a testamentary trust of one of its residents in a similar fashion. We conclude that the District's continuing, principal jurisdiction over the Lalor testamentary trust reflects a sufficient nexus between the District and the trust to justify the District's decision to treat the trust as a "resident" of the District for tax purposes. The District created the legal environment which permitted the trust to come into existence, established the trust when Lalor's will was probated, and has provided access to its courts to all parties with an interest (or potential interest) in the trust. We therefore hold that the District may constitutionally tax the entire net income of the trust.

**B.**

In upholding the District's statute taxing as a resident trust all testamentary trusts where the testator was domiciled in the District at the time of death, we reject the decisions of several state courts which have demanded something more than the residence of the settlor to justify taxation of the trust's entire net income. In our view, these cases—all decided before the Supreme Court's 1992 decision in *Quill*—take an overly formalistic view of the due process analysis and rely far too heavily on the presence of persons and tangible property within the taxing jurisdiction.

Chase Manhattan and the trial court rely primarily upon the Missouri Supreme Court's

opinion in *Swift v. Director of Revenue*, 727 S.W.2d 880 (Mo.1987) (en banc),[10] to support the conclusion that the District's taxation of the Lalor trust violates the Constitution. *Swift* concerned the taxation of testamentary trusts created by the will of a Missouri domiciliary; neither the beneficiaries nor the trustees were residents of Missouri, and the trust assets and records were all located in Illinois. *Id.* at 881–82. Missouri law classified the trusts as "resident trusts" since the testator was domiciled in Missouri at the time of his death. *Id.* at 882. In all relevant respects, then, the scenario in *Swift* is factually and legally indistinguishable from the present case.

The *Swift* court rejected Missouri's attempts to subject the trust to a tax on net income. The court's entire due process analysis consisted of the following two sentences:

> In determining whether this state has a sufficient nexus to support the imposition of an income tax on trust income, we consider six points of contact: (1) the domicile of the settlor, (2) the state in which the trust is created, (3) the location of trust property, (4) the domicile of the beneficiaries, (5) the domicile of the trustees, and (6) the location of the administration of the trust. For purposes of supporting an income tax, the first two of these factors require the ongoing protection or benefit of state law only to the extent that one or more of the other four factors is present.

*Id.* As we have already indicated, we do not agree that the question whether the District currently provides any benefit to the trust turns on the physical location of certain persons or goods within the District. In the personal jurisdiction context, the District's

9. The possibility that a corporation could reincorporate in another state is beside the point. Until the occurrence of such reincorporation, the corporation would remain subject to the taxing authority of the state of its initial corporation. A testamentary trust, of course, cannot "reincorporate" itself in another jurisdiction. A testamentary trust created in the District, therefore, will always have a relationship to the District akin to that between a corporation and the jurisdiction of its incorporation.

10. Chase Manhattan also cites the following cases as consistent with *Swift: Blue v. Depart-*

*ment of Treasury*, 185 Mich.App. 406, 462 N.W.2d 762 (1990); *Pennoyer v. Taxation Div. Dir.*, 5 N.J.Tax 386 (1983); *Mercantile–Safe Deposit & Trust Co. v. Murphy*, 15 N.Y.2d 579, 255 N.Y.S.2d 96, 203 N.E.2d 490 (1964); and *Taylor v. State Tax Comm'n*, 85 A.D.2d 821, 445 N.Y.S.2d 648 (1981). All these cases proceed roughly along the same lines that *Swift* does, and thus little would be gained by discussing them separately in the text. Neither party cites any case that considers the due process issue and reaches the opposite result. .

jurisdiction over the trust itself exists independently of any jurisdiction over the trustees, beneficiaries, or trust assets. The trust resides in the District and certainly benefits from District law, at least to the extent that its very existence depends on District law and the District courts stand ready to adjudicate trust issues. We therefore believe that the District can require such a "resident" trust to pay income taxes in light of the District's role in establishing the trust and the District's willingness to serve as a judicial focal point for litigation involving the trust.

A subsequent Missouri case clarified that if any one of the last four factors identified in *Swift* exists to any extent, the state can constitutionally tax the entire net income of the trust. *See Westfall v. Director of Revenue,* 812 S.W.2d 513, 514 (Mo.1991) (en banc) (holding that trust's ownership of Missouri income-producing real property, and presence in Missouri of certain contingent beneficiaries, justified taxation of trust's entire net income). This result highlights the peculiarities of Missouri's approach to the constitutionality of taxing testamentary trusts and underscores its conceptual flaws. Indeed, Chase Manhattan, apparently recognizing the legal vulnerability of the *Swift/Westfall* distinction, argues in its brief that *Westfall* was wrongly decided. That criticism of *Westfall* seems reasonable. It would make very little constitutional sense to say that Missouri can acquire jurisdiction to tax the entire income of the trust based on the presence of only a portion of the trust assets within its borders. Missouri could not tax the entire net income of a *non-resident* testamentary trust that had no other connection to Missouri than its ownership of some income-producing real property within Missouri. *See Quill,* 504 U.S. at 306, 112 S.Ct. at 1909 (noting that "income attributed to State for tax purposes must be rationally related to values connected with the taxing state" (internal quotation marks omitted)). Missouri, of course, could tax the income earned in Missouri, but it would certainly violate due process if Missouri tried to leverage this authority into the power to tax the entire trust income. *See id.*

*Westfall* therefore recognizes, at least implicitly, that a trust's creation through the administration of a domiciliary's will in the state's courts places the trust in a relationship to the state different from that of a foreign trust, created in a foreign state, that just happens to own some income-producing property in Missouri. We believe this different, indeed special, relationship caused by creation and administration of the testamentary trust—a resident trust—in the taxing state is enough to justify the District's taxation of the entire net income of the trust. *Quill* explicitly rejected the idea that a state's power to tax turns on the physical presence of the taxed entity within the taxing jurisdiction. See *supra* part I.C. The Lalor trust's lack of physical presence within the District cannot and does not undermine the District's other contacts with the trust that render the District's exercise of its taxing authority constitutionally permissible.

### C.

■ We note by way of conclusion that the Lalor trust is entitled to claim a tax credit in the amount of any income taxes paid to any state. *See* D.C.Code § 47–1809.5, –1806.4(a). There exists, therefore, no possibility of double taxation. New York, moreover, does not consider the Lalor trust a resident trust subject to taxation. *See* N.Y. TAX LAW § 605(b)(3)(B) (West, WESTLAW through 1996 Ch. 599) (classifying testamentary trusts as resident, and therefore taxable, only where testator was domiciled in New York at time of death). In basing its tax treatment of testamentary trusts on the domicile of the testator, New York, like the District, recognizes the close nexus between a testamentary trust and the jurisdiction of its creation. The District's decision to disregard the location of the trustees and trust assets in determining the residency and taxability of testamentary trusts, therefore, is not at all unique. *See also Blue,* 462 N.W.2d at 763 (describing similar Michigan statute); *Swift,* 727 S.W.2d at 882 (Missouri); *Pennoyer,* 5 N.J. Tax at 392 (New Jersey). If anything, there seems to be something of a consensus, which we are loathe to declare unconstitutional, that the jurisdiction where a testamentary trust is

created is the *most* appropriate jurisdiction to tax trust income.[11]

\* \* \*

For the foregoing reasons, we reverse the trial court's order granting summary judgment to Chase Manhattan for the tax years 1987–89 and 1991, and denying the District's motion for summary judgment with respect to the same years. We remand this case to the trial court for entry of an order granting the District's motion for summary judgment.

*Reversed and remanded.*

---

11. We express no opinion as to the constitutionality of taxing the entire net income of inter vivos trusts based solely on the fact that the settlor was domiciled in the District when she died and the trust therefore became irrevocable. In such cases, the nexus between the trust and the District is arguably more attenuated, since the trust was not created by probate of the decedent's will in the District's courts. An irrevocable inter vivos trust does not owe its existence to the laws and courts of the District in the same way that the testamentary trust at issue in the present case does, and thus it does not have the same permanent tie to the District. In some cases the District courts may not even have principal supervisory authority over such an inter vivos trust. The idea of fundamental fairness, which undergirds our due process analysis, therefore may or may not compel a different result in an inter vivos trust context.