# Illinois Official Reports

## Appellate Court

---

### *Linn v. Department of Revenue*, 2013 IL App (4th) 121055

---

| | |
|---|---|
| Appellate Court<br>Caption | LEWIS LINN, as Trustee of the Autonomy Trust 3, Plaintiff-Appellant, v. THE DEPARTMENT OF REVENUE; BRIAN HAMER, in His Official Capacity as Director of The Department of Revenue; and DAN RUTHERFORD, in His Official Capacity as Treasurer of the State of Illinois, Defendants-Appellees. |
| District & No. | Fourth District<br>Docket No. 4-12-1055 |
| Filed | December 18, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action seeking the return of a 2006 income-tax payment made under protest by plaintiff trustee on behalf of a trust on the ground that the trust had no connection with Illinois and that taxation of the trust was unconstitutional, the appellate court reversed the entry of summary judgment for defendants, including the Illinois Department of Revenue, because taxation of the trust by Illinois would violate due process where the trust was an *inter vivos* trust, it was not a testamentary trust under the jurisdiction of an Illinois probate court, and although the predecessors of the trust were related to Illinois, the choice of law provision of the trust provided for the application of Texas law, the trust had the benefits and protections of Texas law, the trust had nothing in Illinois in 2006, its business was all in Texas, the trustee, the protector, and the noncontingent beneficiary resided outside Illinois, no trust property was in Illinois, and the trust met none of the criteria that would give Illinois personal jurisdiction in litigation involving the trust. |
| Decision Under<br>Review | Appeal from the Circuit Court of Sangamon County, No. 07-TX-0001/01; the Hon. John Schmidt, Judge, presiding. |

| Judgment | Reversed and remanded with directions. |
|----------|----------------------------------------|

| Counsel on Appeal | Fred O. Marcus (argued) and David S. Ruskin, both of Horwood Marcus & Berk Chtrd., of Chicago, and Alan Y. Ytterberg, of Ytterberg Deery Knull LLP, of Houston, Texas, for appellant. |
|-------------------|--------------|
| | Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and Evan Siegel (argued), Assistant Attorney General, of counsel), for appellees. |

| Panel | JUSTICE TURNER delivered the judgment of the court, with opinion. Justices Knecht and Steigmann concurred in the judgment and opinion. |
|-------|--------------|

**OPINION**

¶ 1 In May 2007, plaintiff, Lewis Linn, as trustee of the Autonomy Trust 3, filed a verified complaint for declaratory and injunctive relief against defendants, the Department of Revenue (Department); Brian Hamer, as the Department's director; and Dan Rutherford, as the Illinois Treasurer. Plaintiff's complaint sought the return of an income-tax payment it had made under protest because any income taxation on the Autonomy Trust 3 was unconstitutional as the trust had no connections with Illinois. The parties filed cross-motions for summary judgment. After memoranda and oral arguments, the Sangamon County circuit court granted defendants' motion for summary judgment and denied plaintiff's.

¶ 2 Plaintiff appeals, arguing the trial court erred in granting summary judgment in defendants' favor because (1) the Illinois choice-of-law provision in the original trust agreement does not apply to the Autonomy Trust 3, and (2) the imposition of Illinois income taxation on the Autonomy Trust 3 is unconstitutional as it violates both the due process and commerce clauses. We reverse and remand with directions.

¶ 3                          I. BACKGROUND

¶ 4 In March 1961, A.N. Pritzker entered into a trust agreement establishing "P.G. Trusts" with trustee Meyer Goldman, in which 20 separate, irrevocable trusts were created. At the time of the agreement, both A.N. and Goldman were Illinois residents, and the trust assets were deposited in Illinois. Article IX of the March 1961 trust agreement allowed the trustee to distribute the whole or part of the corpus of the trust to a different trustee or trustees to hold in further trust for the exclusive benefit of the beneficiary of each of the 1961 trusts. Article V, section 2(b), also gave the trustee the power, in his discretion, to distribute the whole or part of the trust corpus to its beneficiary after the beneficiary had attained 30 years of age. Further,

article XIV of the March 1961 agreement stated the following: "This Agreement shall be construed and administered and the validity of the trusts hereby created shall be determined in accordance with the laws of the State of Illinois." One of the trusts was for the primary benefit of A.N.'s granddaughter Linda Pritzker and was named the "Linda Trust."

¶ 5 Beginning in 1968, other adult beneficiaries of the P.G. Trusts (not Linda) created a new set of trusts called the A.N.P. Trusts with assets from the P.G. Trusts. In 1975, Goldman filed a complaint, addressing, *inter alia*, the adult beneficiaries' right to transfer their interests to the A.N.P. Trusts. Goldman v. Pritzker, No. 75-CH-4214 (Cir. Ct. Cook Co.). In June 1977, the circuit court entered a lengthy order granting the relief requested in Goldman's complaint, as amended, and thus approving the creation of the A.N.P. Trusts. In the written order, the court retained jurisdiction of the cause and parties for the purpose of paying the fees, costs, and expenses of the proceedings and for any further orders necessary to interpret or implement the provisions of the court's order.

¶ 6 A.N. died in 1986 as an Illinois resident, and his estate was probated in Illinois. At some point, Thomas Pritzker of Illinois, Marshall Eisenberg of Illinois, and Arnold Weber succeeded Goldman as trustees of the Linda Trust and were the trustees of the Linda Trust in 2002. (In 2008, the trustees of the Linda Trust still included two Illinois residents and one nonresident.) On January 2, 2002, the trustees of the Linda Trust exercised their limited power of appointment contained in articles V and IX of the March 1961 trust agreement and irrevocably distributed assets from the Linda Trust to plaintiff, as trustee of the Autonomy Trust 3, for the exclusive benefit of Linda.

¶ 7 Along with the power of appointment, the trustees of the Linda Trust and plaintiff entered into a trust agreement that created the Autonomy Trust 3. Provision 9 of the January 2002 trust agreement named Jay Robert Pritzker of Illinois as protector of the trusts created hereunder. We note that Jay was replaced as protector of the Autonomy Trust 3 in December 2002 by Basil Zirinis of Connecticut. Moreover, provision 14 of the January 2002 trust agreement contained the perpetuities savings clause and referenced the lives of those named in the March 1961 trust agreement. Last, provision 15 stated the Autonomy Trust 3 was to be construed and regulated under Texas law, "except that the terms 'income,' 'principal,' and 'power of appointment' and the provisions relating thereto shall be interpreted under the laws of the state of Illinois."

¶ 8 In February 2004, plaintiff filed a complaint in the probate court of Harris County, Texas, seeking reformation of provision 15 of the Autonomy Trust 3 and other trusts that applied Illinois law to some of their terms. Plaintiff sought to strike the language referring to Illinois law, leaving the trusts to be construed and regulated by only Texas law. On November 4, 2005, the probate court entered an order, granting the relief plaintiff requested. However, the judgment stated the following: "This Judgment shall become effective as to each of the Trusts as of the date that the Internal Revenue Service issues a favorable ruling holding that the modifications and declarations of this Judgment to the Trust do not result in the loss of such Trust's generation-skipping transfer tax exempt status or otherwise subject such Trust to the generation-skipping transfer tax."

¶ 9        In 2006, Linda, her children, and the other contingent beneficiaries of the Autonomy Trust 3 were not Illinois residents. Plaintiff resided in Texas, and the Autonomy Trust 3 was administered in Texas. The Autonomy Trust 3 had no assets in Illinois.

¶ 10       In April 2007, the Autonomy Trust 3 filed a 2006 nonresident Illinois income and replacement tax return, reporting no income from Illinois sources and thus no tax was owed. The Department reclassified the Autonomy Trust 3 as an Illinois resident under section 1501(a)(20)(D) of the Illinois Income Tax Act (Tax Act) (35 ILCS 5/1501(a)(20)(D) (West 2006)), taxed 100% of the trust's reported income, and assessed a deficiency liability of $2,729. Pursuant to section 2a of the State Officers and Employees Money Disposition Act (30 ILCS 230/2a (West 2006)), the Autonomy Trust 3 paid the $2,729 in income tax under protest.

¶ 11       In May 2007, plaintiff filed the verified complaint for declaratory and injunctive relief, asserting Illinois's imposition of income tax on the Autonomy Trust 3 violates the commerce, due process, and equal protection clauses of the United States Constitution (U.S. Const., art. I, § 8; amend. XIV, § 1) and the uniformity clause of the Illinois Constitution of 1970 (Ill. Const. 1970, art. IX, § 2). Former Illinois Treasurer Alexi Giannoulias was originally listed as one of the defendants and was later replaced by current Illinois Treasurer Dan Rutherford when Giannoulias's term ended.

¶ 12       In September 2011, plaintiff filed a motion for summary judgment with a supporting memorandum. Along with the memorandum, plaintiff submitted a declaration by him and one by Zirinis. In his declaration, plaintiff states the Texas probate court's judgment became effective on November 4, 2005, the date it was entered. Zirinis stated the duties of the Autonomy Trust 3's protector include the power to remove any trustee, revoke the designation of a successor trustee, and appoint a successor protector.

¶ 13       In May 2012, defendants filed a cross-motion for summary judgment and a response to plaintiff's motion for summary judgment. Defendants first asserted the case could be decided on nonconstitutional grounds and argued (1) the grantor of the Autonomy Trust 3 voluntarily established all of the trusts and subsequent trusts pursuant to Illinois law, (2) the Texas probate court judgment is not binding on this court, and (3) the Department assessed tax on the Autonomy Trust 3 in accordance with Illinois statutes. Defendants then argued the income tax on the Autonomy Trust 3 was constitutional. In support of their motion, defendants attached the following: (1) the March 1961 trust agreement; (2) plaintiff's first response to defendants' interrogatories (in interrogatory No. 9, plaintiff states the Internal Revenue Service had not issued a ruling regarding the generation-skipping transfer tax); (3) plaintiff's response to defendants' second set of supplemental interrogatories; (4) plaintiff's response to defendants' request to admit; (5) the January 2002 trust agreement; (6) the exercise of the power of appointment establishing the Autonomy Trust 3; (7) plaintiff's response to defendants' first supplemental interrogatories; (8) plaintiff's petition in the Texas probate court; and (9) the Texas probate court judgment. In July 2012, plaintiff filed a memorandum in response to defendants' cross-motion for summary judgment and did not attach any supporting documents. In September 2012, defendants filed a reply, attaching the June 1977 judgment of the Cook County circuit court.

¶ 14 On October 12, 2012, the trial court heard oral arguments on the cross-motions for summary judgment. Twelve days later, the court entered a written order, granting defendants' motion for summary judgment and denying plaintiff's. In reaching that judgment, the court found the March 1961 trust agreement provided Illinois law was to govern the trust agreement and any trusts hereby created, which would include the Autonomy Trust 3. The court then concluded the fact Illinois law governed the Autonomy Trust 3 was a sufficient contact to satisfy the due process and commerce clauses.

¶ 15 On November 9, 2012, plaintiff filed a timely notice of appeal, which was in sufficient compliance with Illinois Supreme Court Rule 303 (eff. May 30, 2008), despite its failure to list the Department as a defendant. See *Harry W. Kuhn, Inc. v. County of Du Page*, 203 Ill. App. 3d 677, 684-85, 561 N.E.2d 458, 463 (1990) (finding the failure to list all of the defendants in notice of appeal did not render the notice fatally defective where the defendants were all represented by the same attorney and the appellee did not suffer prejudice). Thus, this court has jurisdiction under Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994).

¶ 16                                    II. ANALYSIS
¶ 17                                 A. Summary Judgment
¶ 18 A grant of summary judgment is only appropriate when the pleadings, depositions, admissions, and affidavits demonstrate no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2010); *Williams v. Manchester*, 228 Ill. 2d 404, 417, 888 N.E.2d 1, 8-9 (2008). " 'As in this case, where the parties file cross-motions for summary judgment, they invite the court to decide the issues presented as a matter of law.' " *A.B.A.T.E. of Illinois, Inc. v. Giannoulias*, 401 Ill. App. 3d 326, 330, 929 N.E.2d 1188, 1192 (2010) (quoting *Liberty Mutual Fire Insurance Co. v. St. Paul Fire & Marine Insurance Co.*, 363 Ill. App. 3d 335, 339, 842 N.E.2d 170, 173 (2005)). We review *de novo* the trial court's ruling on a motion for summary judgment. See *Williams*, 228 Ill. 2d at 417, 888 N.E.2d at 9.

¶ 19                                 B. Illinois Income Tax
¶ 20 The starting point for income taxation in Illinois is section 201(a) of the Tax Act (35 ILCS 5/201(a) (West 2006)), which provides, in relevant part: "A tax measured by net income is hereby imposed on every individual, corporation, *trust* and estate *** on the privilege of earning or receiving income in or as a *resident* of this State." (Emphases added.) See also *Rockwood Holding Co. v. Department of Revenue*, 312 Ill. App. 3d 1120, 1123-24, 728 N.E.2d 519, 523 (2000). For residents, "[a]ll items of income or deduction which were taken into account in the computation of base income for the taxable year by a resident shall be allocated to this State." 35 ILCS 5/301(a) (West 2006). Section 1501(a)(20)(D) of the Tax Act (35 ILCS 5/1501(a)(20)(D) (West 2006)) defines "resident," in pertinent part, as "[a]n irrevocable trust, the grantor of which was domiciled in this State at the time such trust became irrevocable." The parties agree the Autonomy Trust 3 is an irrevocable trust, and A.N. Pritzker, who was an Illinois resident, is considered to be the grantor of the Autonomy Trust 3. Thus, under the Tax Act, the Autonomy Trust 3 is an Illinois resident and subject to Illinois income tax.

¶ 21    On appeal, the parties now agree this case cannot be resolved on a nonconstitutional basis. Thus, we turn to plaintiff's allegations of constitutional violations. Plaintiff asserts the imposition of Illinois income tax on the Autonomy Trust 3 is unconstitutional as applied to the trust as it violates both the due process and the commerce clauses. "In undertaking our review, we presume that statutory enactments are constitutional. The burden is on the party challenging the statute to clearly establish any constitutional invalidity. The burden is a formidable one, and this court will uphold a statute's validity whenever it is reasonably possible to do so." *Allegis Realty Investors v. Novak*, 223 Ill. 2d 318, 334, 860 N.E.2d 246, 255 (2006).

¶ 22                              1. *Due Process*

¶ 23    For a tax to comply with the due process clause, (1) a minimum connection must exist between the state and the person, property, or transaction it seeks to tax, and (2) "the income attributed to the State for tax purposes must be rationally related to values connected with the taxing State." (Internal quotation marks omitted.) *Quill Corp. v. North Dakota*, 504 U.S. 298, 306 (1992) (quoting *Moorman Manufacturing Co. v. Bair*, 437 U.S. 267, 273 (1978)). In *Quill Corp.*, 504 U.S. at 307-08, the Supreme Court equated that analysis with the determination of whether a state has personal jurisdiction over a given entity. After analyzing the case law regarding personal jurisdiction, the *Quill Corp.* Court held the due process clause did not require physical presence in a state for the collection of a use tax. *Quill Corp.*, 504 U.S. at 308. There, the company's ongoing solicitation of business in North Dakota was more than enough to subject it to North Dakota's use tax. *Quill Corp.*, 504 U.S. at 308.

¶ 24    Plaintiff asserts the Autonomy Trust 3 has no connections to Illinois. He notes the Autonomy Trust 3 is a Texas trust that is governed by the laws of and administered in Texas. Moreover, in 2006, the Autonomy Trust 3's trustee, beneficiary, and protector were all not residents of Illinois. Without any connections to Illinois, the imposition of Illinois income tax on the Autonomy Trust 3 would be unconstitutional under the due process clause. Plaintiffs have shown no connections appear to exist with the trust in this case. However, defendants contend connections do exist because (1) the Autonomy Trust 3 owes its existence to Illinois, and (2) Illinois provides the Autonomy Trust 3's trustee and beneficiary with a panoply of legal benefits and opportunities. We note that, on appeal, defendants do not argue that, in 2006, the Autonomy Trust 3 still contained terms to be interpreted under Illinois law and that the Illinois choice of law provision in the March 1961 agreement applies to the Autonomy Trust 3.

¶ 25    Both parties cite the Connecticut Supreme Court's decision in *Chase Manhattan Bank v. Gavin*, 733 A.2d 782 (Conn. 1999), which was decided after the United States Supreme Court's *Quill Corp.* decision. There, the plaintiffs asserted Connecticut's income taxation on the undistributed taxable income of four testamentary trusts and one *inter vivos* trust was unconstitutional because it violated the due process and commerce clauses. *Gavin*, 733 A.2d at 785-86. Since the case before us involves an *inter vivos* trust, we focus on the facts and analysis related to the *inter vivos* trust. Under Connecticut law, a resident *inter vivos* trust is " 'a trust, or a portion of a trust, consisting of the property of (i) a person who was a resident of this state at the time the property was transferred to the trust if the trust was then irrevocable.' "

*Gavin*, 733 A.2d at 789 (quoting Conn. Gen. Stat. § 12-701(a)(4)(D) (1993)). However, with an *inter vivos* trust, taxable income is then modifiable under a formula that takes into account whether the trust has any resident, noncontingent beneficiaries. *Gavin*, 733 A.2d at 790. Thus, Connecticut taxes only that portion of the *inter vivo* trust's undistributed income that corresponds to the number of noncontingent beneficiaries that live in Connecticut. *Gavin*, 733 A.2d at 790. Accordingly, in *Gavin*, 733 A.2d at 790, the taxability of the *inter vivos* trust's income was based on the facts the trust's settlor was a Connecticut resident when he established the trust and the trust's beneficiary was a Connecticut resident.

¶ 26   Regarding due process, the Connecticut Supreme Court found the critical link between Connecticut and the undistributed income sought to be taxed was the fact the *inter vivos* trust's noncontingent beneficiary was a Connecticut resident during the tax year in question. *Gavin*, 733 A.2d at 802. It explained that, as a Connecticut resident, the noncontigent beneficiary's rights to the eventual receipt and enjoyment of the accumulated income were protected by Connecticut law so long as the beneficiary remained a resident of the state. *Gavin*, 733 A.2d at 802. The *Gavin* court recognized the connection was "more attenuated" than in the case of a testamentary trust but still found the connection was sufficient to satisfy due process. *Gavin*, 733 A.2d at 802.

¶ 27   In support of its conclusion, the *Gavin* court noted the United State Supreme Court had held a state may tax the undistributed income of a trust based on the presence of the trustee in the state because it gave the trustee the protection and benefits of its laws (*Greenough v. Tax Assessors*, 331 U.S. 486, 496 (1947)), which are the same benefits and protections provided a resident, noncontingent beneficiary. *Gavin*, 733 A.2d at 802. The *Gavin* court also noted its conclusion was consistent with the California Supreme Court's decision in *McCulloch v. Franchise Tax Board*, 390 P.2d 412 (Cal. 1964). *Gavin*, 733 A.2d at 802. There, the California Supreme Court did not find a due-process violation where California taxed the undistributed income of an out-of-state testamentary trust based solely on the California residence of the trust's beneficiary. *McCulloch*, 390 P.2d at 418. It reasoned California law provided benefit and protection to the resident beneficiary. *McCulloch*, 390 P.2d at 418-19.

¶ 28   Defendants begin their argument the Autonomy Trust 3 owes its existence to Illinois by noting the trust's grantor was an Illinois resident. In support of that argument, they cite portions of the *Gavin* opinion that found the grantor's in-state residency was sufficient to establish a minimum contact as to the four testamentary trusts as well as other case law addressing testamentary trusts. However, we are dealing with an *inter vivos* trust. Since an *inter vivos* trust is not created by the probate of the decedent's will in a state court, its connection with the state has been described as more attenuated than a testamentary trust. *Gavin*, 733 A.2d at 802; *District of Columbia v. Chase Manhattan Bank*, 689 A.2d 539, 547 n.11 (D.C. 1997). Moreover, an irrevocable *inter vivos* trust does not owe its existence to the laws and courts of the state of the grantor in the same way a testamentary trust does and thus does not have the same permanent tie. *District of Columbia*, 689 A.2d at 547 n.11. With the *inter vivos* trust, the Connecticut Supreme Court found the *critical* link between the state and the *inter vivos* trust was the trust's noncontingent beneficiary was a Connecticut resident during the tax year in question. *Gavin*, 733 A.2d at 802. Autonomy Trust 3 does not have a

- 7 -

noncontingent beneficiary in Illinois. Defendants cite no cases finding a grantor's in-state residency is a sufficient connection for due process with an *inter vivos* trust.

¶ 29     On the other hand, we note decisions from other states have found the grantor's in-state residence insufficient to establish a minimum connection. In *Blue v. Department of Treasury*, 462 N.W.2d 762, 764 (Mich. Ct. App. 1990), the Michigan appellate court found insufficient connections between an *inter vivos* trust whose grantor was a Michigan resident and the State of Michigan's imposition of an income tax. There, the only thing in Michigan was one non-income-producing parcel of real estate, and thus the court concluded Michigan provided no ongoing protection or benefit to the trust. *Blue*, 462 N.W.2d at 764. In *Mercantile-Safe Deposit & Trust Co. v. Murphy*, 242 N.Y.S.2d 26, 28 (N.Y. App. Div. 1963), a New York appellate court found a due process violation where New York imposed an income tax on income accumulated in a trust created by a New York resident where the trustee resided in Maryland, the trust was administered in Maryland, and trust assets were in the trustee's exclusive possession and control in Maryland. Accordingly, we find the fact the Autonomy Trust 3's grantor was an Illinois resident is not a sufficient connection to satisfy due process.

¶ 30     Defendants further argue the Autonomy Trust 3 exists only because of Illinois law. However, Autonomy Trust 3 resulted from a January 2002 exercise of the limited power of appointment by the *trustee* of the P.G. Linda Trust, which was provided for in the March 1961 trust agreement. Assuming *arguendo*, an Illinois court ruling validated a provision of the March 1961 agreement that allowed for the limited power of appointment that was later invoked to create the Autonomy Trust 3, the Autonomy Trust 3 was created by the provisions of the March 1961 agreement allowing for powers of appointment and not Illinois law. Further, with income taxation, the focus of the due process analysis is on the tax year in question, which would be 2006 in this case. See *Gavin*, 733 A.2d at 802 (noting the connection for the *inter vivos* trust was the fact a noncontingent beneficiary was an in-state resident during the tax year in question); see also *In re Swift*, 727 S.W.2d 880, 882 (Mo. 1987) (addressing income taxation on a testamentary trust and stating, "An income tax is justified only when contemporary benefits and protections are provided the subject property or entity during the relevant taxing period"). Thus, what happened historically with the trust in Illinois courts and under Illinois law has no bearing on the 2006 tax year.

¶ 31     Additionally, defendants argue the State of Illinois provides the trustee and beneficiary of the Autonomy Trust 3 with a panoply of legal benefits and opportunities. In support of its assertion, it again cites case law addressing testamentary trusts. See *Gavin*, 733 A.2d at 799; *District of Columbia*, 689 A.2d at 544. As we have stated, this case involves an *inter vivos* trust, not a testamentary trust. The Autonomy Trust 3 was not in existence when A.N. Pritzker died and thus was not part of his probate case. Accordingly, no Illinois probate court has jurisdiction over the Autonomy Trust 3, unlike in the testamentary trust cases.

¶ 32     Defendants also cite several Illinois statutory provisions and claim the Autonomy Trust 3, plaintiff, Linda, or a contingent beneficiary can seek those statutory provisions at any time. However, the parties agree that, after the November 2005 Texas reformation order, the Autonomy Trust 3 choice of law provision provided for only the application of Texas law. Further, as stated earlier, the 1977 Cook County case has no application at all to the Autonomy

Trust 3 because it dealt with beneficiary powers of appointment, not trustee powers of appointment in the March 1961 trust agreement. Accordingly, we find the Autonomy Trust 3 receives the benefits and protections of Texas law, not Illinois law.

¶ 33 Last, we note the company in *Quill Corp.* mailed catalogs into North Dakota, seeking business there. *Quill Corp.*, 504 U.S. at 302. Here, in 2006, the Autonomy Trust 3 had nothing in and sought nothing from Illinois. As plaintiff notes, all of the trust's business was conducted in Texas; the trustee, protector, and the noncontingent beneficiary resided outside Illinois; and none of the trust's property was in Illinois. Moreover, the Autonomy Trust 3 meets none of the following factors that would give Illinois personal jurisdiction over the trust in a litigation: "the provisions of the trust instrument, the residence of the trustees, the residence of its beneficiaries, the location of the trust assets, and the location where the business of the trust is to be conducted." *Sullivan v. Kodsi*, 359 Ill. App. 3d 1005, 1011, 836 N.E.2d 125, 131 (2005) (citing *People v. First National Bank of Chicago*, 364 Ill. 262, 268, 4 N.E.2d 378, 380 (1936)). Accordingly, we find insufficient contacts exist between Illinois and the Autonomy Trust 3 to satisfy the due process clause, and thus the income tax imposed on the Autonomy Trust 3 for the tax year 2006 was unconstitutional. Thus, summary judgment should have been granted in plaintiff's favor.

¶ 34 2. Commerce Clause

¶ 35 Since we have found the income taxation of the Autonomy Trust 3 in 2006 violates the due process clause, we do not address plaintiff's commerce clause argument.

¶ 36 III. CONCLUSION

¶ 37 For the reasons stated, we reverse the Sangamon County circuit court's judgment and remand the cause for that court to enter an order granting plaintiff's summary-judgment motion and denying defendants'.

¶ 38 Reversed and remanded with directions.