LILLEHAUG, J. (dissenting).
I respectfully dissent. During the tax year at issue, the four irrevocable inter vivos trusts (the Trusts) had sufficient relevant contacts with Minnesota such that the Trusts' classification as Minnesota "resident trusts" under Minn. Stat. § 290.01, subd. 7b(a)(2) (2016)-and subsequent taxation-did not violate the Due Process Clause. Nor did Minnesota's taxation of the Trusts implicate the Commerce Clause.
I.
At the threshold, I agree with the majority's analytical framework. I agree that the taxpayer "bears a heavy burden" to demonstrate that Minnesota's taxation of the Trusts is unconstitutional. See Kimberly-Clark Corp. v. Comm'r of Revenue , 880 N.W.2d 844, 848 (Minn. 2016). And I agree that the Tax Court erred in concluding that the only relevant contact between the Trusts and Minnesota was the single factor of the grantor's residency at the time the Trusts became irrevocable. The correct method of analysis, as the court holds in Part I of the opinion, is to consider all of the "services, benefits, and protections afforded [the taxpayer] by Minnesota." Luther v. Comm'r of Revenue , 588 N.W.2d 502, 509 (Minn. 1999).
My disagreement is with Part II of the court's opinion, which concludes that, under the Due Process Clause, the Trusts' contacts with Minnesota were insufficient *335 to permit them to be taxed as Minnesota residents. Considering all relevant factors, I conclude that it was constitutional for Minnesota to tax the Trusts.
The Due Process Clause provides that the government shall not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1 ; see also Minn. Const. art. I, § 7. In the taxation context, due process serves to "ensure[ ] that the taxpayer has adequate notice that she may be subject to the tax." Luther , 588 N.W.2d at 508. This court has held that, for a tax to survive a due-process challenge, "there must be (1) 'some definite link, some minimum connection, between a state and the person, property or transaction it seeks to tax' and (2) a rational relationship between 'the income attributed to the State for tax purposes [and the] values connected with the taxing State.' " Id. (quoting Quill Corp. v. North Dakota , 504 U.S. 298, 307, 112 S.Ct. 1904, 119 L.Ed.2d 91 (1992) ).[1] The "minimum connection" requirement "has been likened to the minimum contacts necessary to establish personal jurisdiction." Id.
With this standard in mind, due process has been satisfied here. First, there is a "minimum connection" between Minnesota and the Trusts. From their creation, the Trusts were Minnesota residents. They were created by Reid MacDonald, a Minnesota resident. The Trusts were created to hold almost exclusively Minnesota assets-the common stock of a Minnesota S corporation-over which Minnesotan MacDonald retained control. Further, the trust instruments themselves instruct the trustee-wherever located-to apply the Minnesota Revised Uniform Principal and Income Act and to resolve all questions of law arising under the trust agreements according to "the laws of the State of Minnesota."
Most importantly, when MacDonald made the Trusts irrevocable in 2011, he did so as a Minnesota domiciliary. He was on statutory notice that, as a Minnesotan, his decision would cause the Trusts to become Minnesota "resident trusts." See Minn. Stat. § 290.01, subd. 7b(a)(2) (2016). When a Minnesota grantor knowingly chooses to create a Minnesota resident trust and the trust itself incorporates Minnesota law, why would it be unconstitutional for Minnesota to tax that trust? Put another way: how can it violate due process for a state to tax its residents (in this case, the Trusts) as residents? Other courts have provided a clear answer to this question-it cannot.[2] See T. Ryan Legg Irrevocable Tr. v. Testa , 149 Ohio St.3d 376, 75 N.E.3d 184, 197-98 (2016) (holding that where "an Ohio resident ... conducted business in significant part in Ohio through the corporate form and who disposed of his business and corporate interest ... by means of a trust that he created to accomplish his objectives for himself and his family," that resident's Ohio contacts *336 were "material for constitutional purposes"); see also District of Columbia v. Chase Manhattan Bank , 689 A.2d 539, 543 (D.C. 1997) (holding that the District of Columbia could "tax a testamentary trust throughout its entire existence even if its only connection to the District is that the testator was domiciled there at the time of death"). Indeed, here the Trusts "owe[ ] [their] very existence to the laws" of Minnesota. Chase Manhattan Bank , 689 A.2d at 543.[3]
Second, there is a rational relationship between the Trusts' income and the protection and benefits that Minnesota confers upon them. The Trusts were funded with shares of common stock in a Minnesota S corporation. See Luther , 588 N.W.2d at 509 (noting that the relator received benefits from the state because "[o]n every day of the year, state laws protected ... the corporations with which she was affiliated"). The choice-of-law provision in the trusts invoke the benefits and protections of Minnesota laws. See Burger King Corp. v. Rudzewicz , 471 U.S. 462, 482, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) ("Nothing in our cases ... suggests that a choice-of-law provision should be ignored in considering whether a defendant has 'purposefully invoked the benefits and protections of a State's laws' for jurisdictional purposes."). Similarly, the requirement that the trustee "apply the rules stated in the Minnesota Revised Uniform Principal and Income Act" ensures that the Trusts' beneficiaries receive the benefits and protections of Minnesota law. Further, one of the trust beneficiaries is still domiciled in the state. Minnesota can properly require the Trusts to contribute to the State for costs associated with providing these benefits, services, and protections to the Trusts, the trustee, and the beneficiaries.
Therefore, I would conclude that the "minimum connection" and "rational relationship" requirements of due process have been satisfied here.
Much of my analysis considers events that happened prior to 2014-the tax year at issue here. The majority asserts that what happened before 2014 is not "particularly relevant." To the contrary: what happened before 2014 created the legal structure of the very Trusts at issue.
The majority also observes that by 2014 circumstances had changed, making any remaining connections between the Trusts and Minnesota "extremely tenuous contacts." It is true that, in 2014, a non-Minnesota trustee was in place and the Minnesota S corporation stock was sold. But the sale occurred in the second half of 2014. Thus, it is not as if the trust assets in 2014 had no connection to Minnesota; indeed, most of the Trusts' income was solidly connected to the state. In sum, contrary to the majority's conclusion, the remaining connections to Minnesota in 2014 were both relevant and substantial.
The majority cites several United States Supreme Court decisions to support its conclusion that the citizenship of the trustee , not the grantor, is the controlling factor in a due-process analysis. The majority's reliance on these decisions is misplaced. The majority cites Greenough v. Tax Assessors of Newport , 331 U.S. 486, 67 S.Ct. 1400, 91 L.Ed. 1621 (1947), for the proposition that "[t]he citizenship of the trustee and not that of the trust or the residence of the beneficiary is the controlling factor." Id. at 495-96, 67 S.Ct. 1400. But this language arose in the *337 context of explaining the relevance of a trustee's citizenship when determining whether a federal court has diversity jurisdiction over a trust dispute. See id. This comment on an unrelated legal principle is dicta.
The majority also cites Anderson v. Wilson , 289 U.S. 20, 53 S.Ct. 417, 77 L.Ed. 1004 (1933), for the proposition that the grantor's domicile is not relevant when performing a due process analysis. But the issue in Wilson was "whether the difference between the value of real estate at the death of a testator and the proceeds realized thereafter upon a sale by the trustees may be deducted as a loss by the taxpayer," the trust beneficiary. Id. at 21, 53 S.Ct. 417. In concluding that the beneficiary was not allowed to deduct the loss, the Court noted that "the trust, and not the taxpayer, has suffered the loss resulting from the sale of the [real estate]" and the law treats trusts "as a separate existence ... claiming and receiving its own appropriate [tax] deductions." Id. at 26-27, 53 S.Ct. 417. Wilson is devoid of any due-process analysis and thus has little persuasive value here.[4]
In sum, the Trusts have not met the heavy burden to show a violation of the Due Process Clause.
II.
Because I conclude that Minnesota's taxation of the Trusts did not violate due process, I would reach, and reject, the Trusts' alternative argument, that the taxation violated the Commerce Clause.
The Commerce Clause states that "[t]he Congress shall have Power ... [t]o regulate Commerce with foreign Nations, and among the several States." U.S. Const. art. I, § 8, cl. 3. In addition to the affirmative grant of power to Congress, courts have long held that the Commerce Clause also contains an "implied negative command"-the dormant Commerce Clause. Luther , 588 N.W.2d at 510. The dormant Commerce Clause commands that "states cannot, through the enactment of statutes or regulations, discriminate against or unduly burden interstate commerce." Id. "A tax may be consistent with due process but still violate the Commerce Clause." Id. The Trusts argue that Minn. Stat. § 290.01, subd. 7b(a)(2) violates the dormant Commerce Clause.
Before considering the merits of a Commerce Clause challenge, the gateway inquiry is "whether the challenged statute implicates the Commerce Clause." Chapman v. Comm'r of Revenue , 651 N.W.2d 825, 832 (Minn. 2002). The purpose of the dormant Commerce Clause is to "protect[ ] markets and participants in markets." Gen. Motors Corp. v. Tracy , 519 U.S. 278, 300, 117 S.Ct. 811, 136 L.Ed.2d 761 (1997). Accordingly, to implicate the dormant *338 Commerce Clause, the taxpayer must demonstrate that "application of [ Minn. Stat. § 290.01, subd. 7b(a)(2) ] has a substantial effect on an identifiable interstate economic activity or market." Luther , 588 N.W.2d at 511. In other words, "the dormant Commerce Clause will not apply unless there is actual or prospective competition between entities in an identifiable market and state action that either expressly discriminates against or places an undue burden on interstate commerce." Stelzner v. Comm'r of Revenue , 621 N.W.2d 736, 740-41 (Minn. 2001). Further, the Commerce Clause is not implicated unless the impact on interstate commerce is "more than merely incidental." Id. at 741.
Here, the Trusts have not demonstrated that application of the statute "has a substantial effect on an identifiable interstate economic activity or market." Luther , 588 N.W.2d at 511. Nor have the Trusts shown that any impact on interstate commerce would be "more than merely incidental." Stelzner , 621 N.W.2d at 741. Accordingly, the Trusts have not met their "heavy burden" to show that Minnesota's definition of "resident trust" implicates the Commerce Clause. See Kimberly-Clark Corp. , 880 N.W.2d at 848.
Because I would conclude that Minn. Stat. § 290.01, subd. 7b(a)(2), as applied here, is constitutional under the Due Process Clause and does not implicate the Commerce Clause, I respectfully dissent.

The United States Supreme Court has since overturned Quill to the extent that Quill 's interpretation of the "substantial nexus" prong of Complete Auto Transit, Inc. v. Brady , 430 U.S. 274, 279, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977), "is an incorrect interpretation of the Commerce Clause." South Dakota v. Wayfair, Inc. , --- U.S. ----, 138 S.Ct. 2080, 2092, --- L.Ed.2d ---- (2018).

This position is also supported by leading scholars in the field of tax law. See 2 J. Hellerstein & W. Hellerstein, State Taxation ¶ 20.09[2][b], p. 20-211 (3d ed. 2017) (hereinafter Hellerstein & Hellerstein) ("[W]e believe it unlikely that the Supreme Court would hold today ... that the Due Process Clause bars the state in which a resident settlor or decedent created a trust from taxing income accumulated by the trust from intangibles held by the trustee who resides outside the state and administers the trust there.").

The majority notes that Chase Manhattan Bank dealt with a testamentary trust, whereas here we are dealing with inter vivos trusts. Although Chase Manhattan Bank left open the question of whether its holding would apply to inter vivos trusts, 689 A.2d at 547 n.11, I see no sound reason for treating the two types of trusts differently in this context.

The majority also cites Safe Deposit & Trust Co. of Baltimore v. Virginia , 280 U.S. 83, 50 S.Ct. 59, 74 L.Ed. 180 (1929), which held that Virginia did not have the right to tax securities that were "property within Maryland" and to which "nobody within Virginia ha[d] the present right to their control or possession, or to receive income therefrom, or to cause them to be brought physically within her borders." Id. at 91, 50 S.Ct. 59. But, in 2014, the Trusts were more closely connected to Minnesota than the securities at issue in Safe Deposit & Trust Co. Further, a driving concern behind the decision in Safe Deposit & Trust Co. was that permitting Virginia to tax the securities would allow "a double and oppressive assessment." Id. at 94, 50 S.Ct. 59. This same concern is not present here. Under Minn. Stat. § 290.01, subd. 7b(a), to be taxed as a resident trust, the grantor (or decedent) must be domiciled in Minnesota at the time the trust becomes irrevocable (or at the time the decedent dies). Moreover, courts and legal scholars have expressed doubt as to whether Safe Deposit & Trust Co. remains good law. See Chase Manhattan Bank v. Gavin , 249 Conn. 172, 733 A.2d 782, 803 (1999) ; 2 Hellerstein & Hellerstein ¶ 20.09[2][b].